# The Baltimore and Ohio Rail Road Company, *vs.* William Lamborn.

At common law a plaintiff cannot recover for injuries to which his own fault or negligence directly contributed, and this principle is *not changed* by the acts of 1838, ch. 244, and 1846, ch. 346, in relation to the liability of rail road companies in this State, for injuries to cattle and stock on their roads.

Under these acts, rail road companies are bound to show that the damage was the result of inevitable accident *only* in cases where the party complaining has not contributed in any manner, by his own negligence or violation of law, to the injury complained of.

The owner of cattle is bound to keep them in an enclosure or in custody at *his peril*, for every entry by them on another's *possession* is a *trespass*, and this principle applies as well to the intrusion of cattle and horses, upon the land over which a rail road company is entitled to its franchise as to the property of a private owner.

The acts of 1838, ch. 244, and 1846, ch. 346, give a right of action to the owner of stock, killed or injured on a railway, *only* when such stock is on the railway *without any fault on the part of the plaintiff.*

Appeal from the Circuit Court for Howard county.

*Trespass on the case*, brought by the appellee against the appellant, to recover the value of a horse belonging to the plaintiff, killed by the locomotive of the defendant. Plea *non cul.*

*Exception.* The facts of the case, as given in evidence, are fully stated in the opinion of this court. The defendant asked four instructions, in substance as follows:

1st. If the jury believe from the evidence, that the plaintiff's horse was injured by the locomotive of the defendant, under charge of its agents, and that the horse was on the track of the rail road through any negligence on the part of the plaintiff to keep the horse within his close, the plaintiff is not entitled to recover.

2nd. If the jury believe from the evidence, that the plaintiff's horse was injured by the locomotive of the defendant under the management and control of its agents, and that, at the time of such injury, the horse had strayed upon the track of the rail road through the want of fences which the plaintiff

33    v. 12.

was bound to erect, the plaintiff is not entitled to recover, though, at the immediate time of the injury being done, the defendant was guilty of actual negligence.

3rd. If the jury believe from the evidence, that the plaintiff's horse was injured by the locomotive of the defendant, under the management and control of its agents, and that the horse had strayed upon the track of the rail road through any defect in the fences or enclosures of the plaintiff, then the plaintiff is not entitled to recover.

4th. If the jury believe from the evidence, that the plaintiff's horse was killed on the rail road, by being run over by a locomotive under the control and management of the defendant's agents, and that the horse was upon the track of the rail road without any fault or negligence of the defendant, then the plaintiff is not entitled to recover, he being bound to keep the horse upon his premises and within his enclosures.

These instructions the court, (BREWER, J.,) refused to give, and to this ruling the defendant excepted, and the verdict and judgment being in favor of the plaintiff, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Thomas Donaldson* for the appellant:

1st. The injury complained of would not have happened, but for the negligence of the plaintiff in permitting his horse to stray at large in the neighborhood of the rail road.   The well settled principle of the common law, that a plaintiff is not entitled to recover for injuries to which his own fault directly contributed, is not abrogated or even modified by the acts of 1838, ch. 244, and 1846, ch. 346.   The sole effect of these acts, is to throw upon the defendant the burden of proof in regard to the absence of negligence on his part, leaving the question of the effect of the negligence of the plaintiff, exactly as it stood under the common law.   4 *Md. Rep.*, 242, *Balto. & Susq. Rail Road Co., vs. Woodruff.*  14 *Barb.*, 364, *Marsh vs. New York & Erie Rail Road Co.*  3 *Kernan*, 42, *Corwin vs. New York & Erie Rail Road Co.*  13 *Georgia*, 68,

*Macon & Western Rail Road Co., vs. Davis.* Any other con· struction of these acts would not only be unreasonable, and would subject rail road companies to the grossest imposition, and the travelling community to imminent hazards, but would be an invasion of constitutional rights.

2nd. Every owner of cattle is bound to keep them within his own close; if they stray upon the rail road they are trespassers, and the owner is himself the cause of any injury suffered in consequence. The acts of Assembly referred to cannot reasonably be so construed as to give a right of action, except in cases where the cattle are rightfully crossing the track as when driven on a highway. 4 *Exch. Rep.*, 580, *Sharrod vs. London & North-Western Railway Co.* 5 *Denio*, 255, *Tonawanda Rail Road Co., vs. Munger.* 11 *Barb.*, 112, *Clark vs. Syracuse & Utica Rail Road Co.* 19 *Penn. State Rep.*, 298, *Rail Road Co., vs. Skinner.* 1 *Foster*, 363, *Towns vs. Cheshire Rail Road Co.* 2 *Zabriskie*, 185, *Vandegrift vs. Rediker.* 2 *Mich.*, 259, *Williams vs. Michigan Central Rail Road Co.* 6 *Barr.*, 472, *Knight vs. Abert.*

3rd. It is gross negligence for the owner of cattle, to suffer them to go at large in the vicinity of a rail road. 14 *Barb.*, 364. 13 *Barb.*, 497, *Talmadge vs. Renssalaer & Saratoga Rail Road Co.*

*Wm. H. G. Dorsey* for the appellee:

There is no evidence in the record of any negligence on the part of the plaintiff, and under the acts of 1838, ch. 244, and 1846, ch. 346, the plaintiff was entitled to recover, unless the defendant could show the injury to the horse to be the result of unavoidable accident.

BARTOL, J., delivered the opinion of this court.

This is an action to recover the value of a horse, belonging to the appellee, killed by the locomotive of the appellant.

At the trial of the cause, the plaintiff, to maintain the issue on his part, proved that some time in the month of September 1855, he was the owner and proprietor of certain land adjoining and contiguous to the Washington branch of the Baltimore

and Ohio Rail Road, at or near the Hanover switch, where the cars of the defendant stop, when necessary, to put off or take up passengers, and that he was also the owner of a horse which, at the time referred to, was standing at or near the point indicated, on the line of the said rail road, though not immediately in the track, and which was run over by the cars of the said defendant, and so injured as to be entirely lost to the said plaintiff.

The defendants, then, for the purpose of maintaining the issue joined on their part, proved that on the occasion of the injury to the horse of the plaintiff, a locomotive, with a train of passenger cars attached, in charge of their agents, was proceeding from Baltimore to Washington, at a rate of speed of about twenty-five miles an hour, that on approaching the switch they gave the usual and ordinary signal, with the whistle; that when within a short distance of said Hanover switch, they observed the horse of the plaintiff, distant some hundred and fifty yards, standing near the rail road track, and on or near a road which crosses said track; that immediately upon observing the horse, the whistle was sounded to put down the brakes, and the brakes were put down instantly; that the horse immediately took to the track of the rail road, and run some distance in the road, when he was overtaken by the cars and run over; that at the time of the collision, the speed of the cars had been reduced to some ten miles the hour. It was further proved, that if the agents having charge of the cars, had, at the time of the discovery of the horse, when they were going at the rate of twenty-five miles an hour, reversed the engine, it would have been at the peril of the entire train and passengers, as, in all probability, it would have thrown the cars from the track.

The plaintiff then proved, upon cross-examination, that the point where the horse was first seen, was a point on the rail road which, from the curve in the road, could not be seen at a greater distance than a hundred and fifty yards, and that carts and wagons are frequently passing said rail road during loading and unloading iron ore, to be transported over said rail road; and that it would have been impossible to arrest the

cars, going at the rate at which they were travelling, when they first discovered the horse, sufficiently to avoid the collision.

Whereupon the defendant offered four prayers, which were rejected by the court below, and the verdict and judgment being in favor of the plaintiff the defendant appealed.

In all the prayers the principle is involved, that if the horse, when killed, was upon the track of the rail road, *through the negligence of the plaintiff in not keeping the horse within his close*, then he is not entitled to recover.

It is a principle of the common law, too well settled to require authorities to be adduced in its support, that, in an ordinary case, a plaintiff is not entitled to recover for injuries to which his own fault or negligence directly contributed; but it is contended by the appellee's counsel, that this case is freed from the operation of that principle, by force of the provisions of the acts of Asembly of 1838, ch. 244, and 1846, ch. 346.

The former of these acts was carefully considered, and its construction settled by this court, in the case of *The Baltimore & Susquehanna Rail Road Co., vs. Woodruff*, 4 *Md. Rep.*, 242.

It was then decided that "the act simply changes" the rule of evidence, by releasing the plaintiff from proving negligence, if the fact of the *injury* is established, and casts the *onus* upon the defendant of showing there was no negligence" on its part. In other respects, the rights of the parties and their liabilities at the common law, remained unchanged by the act of 1838.

The act of 1846, ch. 346, while it leaves the *onus* of proof where the act of 1838, had placed it, on the defendant, requires that the rail road company shall, in order to exempt itself from responsibility, prove "that the damage or injury sustained, was *the result of unavoidable accident*."

This court, in construing the act of 1838, said, that it restored the common law rule in relation to negligence, and imposed on the company the duty of showing the exercise of reasonable care and caution; See 4 *Md. Rep.*, 256. The language of the act of 1846 is somewhat different, and must be construed as imposing on the company the highest degree of care and caution; by its terms nothing can exempt the company, but to show that the damage complained of was the result of *unavoidable accident*.

But, in our opinion, this applies only to those cases where the party complaining has not contributed in any manner by his own negligence or violation of law to the act complained of. Or in other words, the rule of the common law to which we have adverted, remains unchanged by the acts of Assembly to which we have referred. And we concur in the views taken by the appellant in his argument, that any other construction of these acts, would subject rail road companies to the greatest imposition and expose the lives of passengers to the most constant and imminent peril. In the language of Chief Justice Gibson, in 19 *Pa. State Rep.*, 302, "A rail road company is a purchaser, in consideration of public accommodation and convenience, of the exclusive possession of the ground paid for to the proprietors of it, and of a license to use the greatest attainable rate of speed, with which neither the person nor the property of another may interfere. The company on the one hand, and the people of the vicinage on the other, attend respectively to their particular concerns, with this restriction of their acts, that no needless damage be done. But the conductor of a train is not bound to attend to the uncertain movements of those loitering or roving cattle by which our railways are infested. Any other rule would put a stop to the advantages of railway travelling altogether." To the same effect see *Clark vs. Syracuse & Utica Rail Road Co.*, 11 *Barbour*, 112. *Marsh vs. The New York & Erie Rail Road Co.*, 14 *Barbour*, 364, and the other cases cited by the appellant in the argument.

"By the common law, an owner of cattle is bound to keep them in an inclosure or in custody at his peril, for every entry by them on another's possession is a trespass," and this is the law of Maryland, and applies as well to the intrusion of cattle and horses upon the land over which a rail road company is entitled to its franchise as to the property of a private owner. And the construction which we put upon the acts of Assembly of 1838 and 1846, is, that they give a right of action, only where the cattle, horses, &c., of the plaintiff, are on the railway, without any fault on his part. And the question of the negligence or fault of the plaintiff, in the case before us, was a

proper subject to be passed upon by the jury. That question was properly presented by the several prayers of the defendant, and the circuit court erred in rejecting them.

*Judgment reversed and procedendo awarded.*

(Decided July 20th, 1858.)